IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DEBORAH B. SCARCE, | ) | |
| | ) | Case No. 4:05CV00042 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| K-MART CORPORATION, | ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |

Before me now is Defendant K-Mart Corporation's ("Defendant") Fed. R. Civ. P. 56 Motion for Summary Judgment against Plaintiff Deborah B. Scarce ("Plaintiff"). The parties have briefed the issues and oral argument was held on April 6, 2006. The motion is therefore ripe for decision. For the reasons stated herein, Defendant's Motion for Summary Judgment will be **GRANTED.**

**I.     LEGAL STANDARD**

*A.     Summary Judgment*

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

1

247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

      B.     *Virginia Substantive Law*

Virginia substantive law will govern this diversity case. Under Virginia law, when there is no evidence that the defendant or one of its agents caused the plaintiff to slip and fall, it is the plaintiff's burden to establish how long the substance that caused the fall was on the ground. *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 184 (1990). "Constructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe*, 246 Va. 239, 242 (1993) (citing *Colonial Stores v. Pulley*, 203 Va. 535, 537 (1962)). Hence, if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a prima facie case." *Id*. (emphasis in original). In other words, when there is "no evidence that the defendant knew of the presence of the [substance] on the floor nor is there any showing of the length of time if may have been there[,] [i]t is just as logical to assume that it was placed upon the floor an instant before the plaintiff struck it as it is

2

to infer that it had been there long enough that the defendant should, in the exercise of reasonable care, have known about it." *Pulley*, at 537-38.

## II.　STATEMENT OF THE FACTS

In accordance with the rules of law governing a summary judgment motion, I will recount the facts in the light most favorable to Plaintiff. On the evening of June 24, 2003, Plaintiff and her husband went shopping for a boat trailer tire and a cigarette light adapter at the Danville K-Mart. They were looking for the cigarette light adapter in the automotive section of the store and, apparently in hopes of finding the item faster, they each turned down separate display aisles. While walking down the aisle, Plaintiff slipped and fell, injuring her right shoulder. The aisle that Plaintiff fell on is approximately six to eight feet wide and approximately 22 feet long. After falling, Plaintiff noticed a slick, clear, liquidy substance on the tile floor of the aisle. After coming to his wife's aid, Plaintiff's husband noticed a half-used bottle of tire shine on a shelf in a position far removed from other similar substances. Plaintiff has raised no argument that the substance was deposited onto the tile by a K-Mart employee. Rather, both sides seem to agree that another, unknown, K-Mart customer put the substance on the tile. To substantiate this assumption, K-Mart's ranking employee that night, Isabelle Wright, told the Scarces that in the 25 years she had worked at K-Mart, people had spilled substances on the floors throughout the building "several times." (Wright Dep., p. 17).

The slick spot itself has been described by the Scarces and Wright as being approximately six to eight feet wide (the entire width of the aisle) and anywhere from five to eleven feet long. The only other person with knowledge of the slick spot was James Davis, another K-Mart customer. Davis had walked down the same aisle that Plaintiff fell less than one

3

minute prior to the accident. He slipped on the substance but did not fall and remarked to his wife - whom he met up with at the end of the aisle - that he had just about "busted my you know what." (Davis Dep., p. 7). While making this comment, Davis heard Plaintiff fall. Davis estimated the time between his near fall and Plaintiff's fall as being "less than a minute." (*Id*., p. 14). Davis also estimated the slick spot to be about 18 inches wide and approximately eleven feet long.

Neither Plaintiff, her husband, Wright, Davis, nor anyone else has any knowledge as to how long the clear substance had been on the tile and there is no evidence that any K-Mart employee was aware of the slick spot prior to Plaintiff's accident. Lastly, Wright stated that the aisles were only cleaned after the store closed and that there was no schedule of mopping or inspection for messes. (Wright Dep., p. 14) Wright also stated, however, that if a K-Mart employee saw a spill or a mess, they were to clean it up immediately. (*Id*., p. 15).

### III. PROCEDURAL HISTORY

Plaintiff filed suit in Danville Circuit Court on June 16, 2005. Plaintiff's motion for judgment was served on Defendant's registered agent on July 11, 2005. Defendant timely removed the case to this Court on August 8, 2005. Defendant filed its motion for summary judgment on February 24, 2006. Plaintiff filed her brief in opposition on March 10, 2006 and Defendant filed its reply brief on March 20, 2006. Oral argument on the motion was held before this Court on April 6, 2006.

### IV. DISCUSSION

In this case, Plaintiff has alleged that Defendant was on constructive notice of the spill that caused her to fall. Virginia's laws for slip and fall cases which are founded on constructive

4

notice simply do not make Plaintiff's claim actionable. Therefore, Defendant's motion for summary judgment must be **GRANTED**.

Plaintiff's case cannot survive summary judgment because she has put forth no evidence to show when the substance was put on Defendant's tile. Plaintiff argues that it is sufficient proof of constructive notice, at least for summary judgment purposes, that Davis had nearly fallen on the same substance immediately prior to Plaintiff's fall. Plaintiff posits that the sheer amount of the substance that was on the tile proves that whoever put the substance on the tile must have had ample time to do so before Davis slipped. According to Plaintiff, this long span of time is sufficient to show constructive notice. To buttress this contention, Plaintiff submitted an affidavit stating that she purchased a bottle of Armor All Tire Shine which was similar to or the same as the bottle of tire shine that caused her fall. Plaintiff's affidavit states that one squeeze of the bottle sprays out only enough liquid to cover an area of 56 square inches. In the light most favorable to Plaintiff, the slick area that Plaintiff fell on was 88 square feet. Therefore, it must have taken dozens of sprays to cover the area.

Plaintiff's argument and "test" is insufficient as a matter of law to impute constructive notice to Defendant. First of all, there is absolutely no evidence that the person who put the substance on the tile did so by spraying it. It is just as possible that the person opened the bottle or bottles and poured the substance over the tile in a matter of seconds. It is equally plausible that several people with several bottles sprayed the substance onto the tile. In other words, there is nothing whatsoever in the record to substantiate Plaintiff's theory on how the substance got on the tile. The law governing summary judgment requires me to view the facts and inferences in the light most favorable to Plaintiff, however the law does not require me to consider abstract

5

hypotheses without any factual basis that, if true, would bolster Plaintiff's case.

Since Plaintiff cannot establish when the substance was put on the tile, her case must fail. Indeed, Plaintiff's case is almost indistinguishable from a recent Fourth Circuit case that applied Virginia law to a slip and fall claim. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446 (4th Cir. 2004). In that case, the plaintiff was looking at a display of mirrors which were in "disarray." *Id.*, at 448. Before the plaintiff could move or touch any of the mirrors, they fell and injured her. *Id.* The plaintiff argued that Wal-Mart was on constructive notice because it knew about the general risk of falling merchandise and should have known about the poorly arranged display of mirrors because they had been in a state of disarray for at least an hour. *Id.*, at 454. The Fourth Circuit rejected both arguments.

First, concerning the general problem of falling merchandise, the Court found this to be insufficient proof under Virginia law because it did not address whether Wal-Mart had constructive notice of "the *specific* unsafe condition" that injured the plaintiff. *Id.* (emphasis in original). The Court found that while some states would consider the foreseeability of an accident occurring based on the Defendant's prior knowledge of general unsafe conditions under the so-called "method theory," the Virginia Supreme Court had rejected the "method theory" in *Parker*. *Id.*, (citing *Parker*, at 651, n. 3). Instead, as stated above, Virginia courts are required to limit their inquiry to the defendant's knowledge of the specific unsafe condition that caused the plaintiff's injury. *Id.*

Second, concerning the mirror arrangement itself, the Fourth Circuit found that the plaintiff had failed to put forth sufficient evidence as to how long the dangerous condition had existed prior to her accident. *Id.* The plaintiff could only prove that the condition had arisen

6

sometime between the time of her accident and an hour before. *Id*. Thus, because she could not prove when the dangerous condition occurred with any specificity, her constructive notice argument failed. *Id*.

In the present case, Plaintiff has even less evidence of when the dangerous condition occurred than the *Hodge* plaintiff. Here, Plaintiff has proffered no time frame whatsoever as to when the substance could have been put on the tile. As a result, it is as plausible to assume that the substance had been on the tile for only a few minutes as it is to assume that it had been on the tile for a period long enough for Defendant to have acquired constructive notice of it.

Finally, Plaintiff has also put forth an argument that Defendant was on notice of a recurring problem of children spilling liquids on floors throughout its building. This argument is based on Wright's statement about children spilling substances on Defendant's floors several times. Without deciding whether "several" spills over a 25 year span can be considered a recurring problem from which constructive notice could be imputed to Defendant, Plaintiff's argument must fail based on my analysis of the *Hodge* case, above. I believe that the Fourth Circuit and the Virginia Supreme Court would reject Plaintiff's argument as simply a reformulation of the rejected "method theory." *See, Hodge*, at 454; *Parker*, at 651, n. 3.

## V.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment will be **GRANTED**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 7th day of April, 2006.

7

s/Jackson L. Kiser
Senior United States District Judge